RUCKER, J.,
dissenting.
I respectfully dissent. As a matter of law none of the facts recited in the state trooper’s lengthy affidavit establishes probable cause to search Eaton’s home. The affidavit does reveal that the trooper was acquainted with defendant’s brother, Wayne Eaton, “from prior drug investigations,” and that it was Wayne Eaton whom Gonzalez followed to the muffler shop. App. at 17. Concerning Willie Eaton the affidavit says he “arrive[d] in a blue vehicle. Willie Eaton then spoke with Wayne Eaton and Gonzalez. Willie Eaton then pulled his vehicle into the service bay.” Id. Thereafter, officers heard movement in Gonzalez’s car “consistent with the sound of someone attempting to retrieve the cocaine in the vehicle” and heard Gonzalez say, “Show it to me.” Id. At that point “officers then entered the business and secured the location. While doing so Wayne Eaton was attempting to flee through the back door of the business.” Id. Inside of Gonzalez’s car officers retrieved a black bag containing approximately $60,000 to $100,000 in currency along with “a quantity of crack cocaine.” App. at 18. Along with Wayne Eaton and Gonzalez, Willie Eaton was arrested and the officers obtained a warrant to search his home for “documents relating to drug trafficking.” Id. According to the trooper obtaining the warrant, “Affiant has been working narcotics investigations for approximately nine (9) years with the Indiana State Police. Affiant is currently assigned [to] the Drug Enforcement Administration. Affiant knows that drug traffickers commonly keep records to maintain and promote the business of drug trafficking. Drug traffickers will commonly keep trafficking information in a variety of forms including: ledgers, computers, cell phones, pagers, phone bills, and wire transfer receipts. Affiant knows that drug traffickers often keep U.S. currency within quick access and rarely place money in *303 financial institutions for fear of detection.” Id.
In deciding whether to issue a search warrant, “[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The duty of the reviewing court is to determine whether the magistrate had a “substantial basis” for concluding that probable cause existed. Id. at 238-39, 103 S.Ct. 2317. A substantial basis requires the reviewing court, with significant deference to the magistrate’s determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. State v. Spillers, 847 N.E.2d 949, 953 (Ind.2006). A “reviewing court” for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. Id.
There is authority for the proposition that a neutral and detached magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and type of offense. See, e.g., United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir.1993) (“In the case of drug dealers, evidence is likely to be found where the dealers live.”); State v. Godbersen, 493 N.W.2d 852, 855 (Iowa 1992) (Where drugs found in car were packaged to indicate person was dealer, there exists reasonable belief that the person kept drugs and other evidence in residence.).
But, the “physical entry of the home is the chief evil against which the ... Fourth Amendment is directed....” United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Thus, the proper focus of a probable cause affidavit for a search warrant is not whether the defendant committed a crime, but rather the likelihood that evidence will be found in the place to be searched. Zurcher v. Stanford Daily, 436 U.S. 547, 556 & n. 6, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). As a consequence most courts require that a nexus between the items to be seized and the place to be searched must be established by specific , facts; an officer’s general conclusions are not enough. See, e.g., United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir.1994) (While officer’s training and experience may be considered in determining probable cause, it cannot substitute for the lack of an evidentiary nexus.); United States v. Lalor, 996 F.2d 1578, 1582-83 (4th Cir.1993) (Although probable cause can be inferred from circumstances, including the nature of the item and where one might normally keep it, because no evidence connected drug activity to defendant’s home the warrant was defective.); United States v. Rosario, 918 F.Supp. 524, 531 (D.R.I.1996) (To permit a search warrant based upon the self-avowed expertise of a law enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.); United States v. Rios, 881 F.Supp. 772, 776-77 (D.Conn.1995) (Officer’s general averments based on training and experience do not, standing alone, constitute a substantial basis for the issuance of a search warrant.); State v. Kahn, 555 N.W.2d 15, 18 (Minn.Ct.App.1996) (requiring facts specifically linking drug activity to dealer’s residence and rejecting generalizations regarding habits of drug dealers); State v. Johnson, 6 Neb.App. 817, 578 N.W.2d 75, 83 (1998) (no probable cause where supporting affidavit contained gen *304 eralizations about the habits of drug dealers but no articulable facts showing these generalizations applied to defendant); State v. Silvestri, 136 N.H. 522, 618 A.2d 821, 824 (1992) (rejecting a per se rule that if the magistrate finds suspect is probably a drug dealer then probable cause to search that person’s residence automatically follows); State v. Ward, 222 Wis.2d 311, 588 N.W.2d 645, 652 (Ct.App.1998) (To allow a blanket inference that drug dealers keep incriminating evidence in their homes would relieve law enforcement of any responsibility to place before the magistrate the “underlying circumstances” which establish evidence of drug dealing will likely be found in the dealer’s residence.).
These cases are consistent with the requirement in this jurisdiction that a finding of probable cause must be grounded in fact. Until today this Court has long recognized that probable cause to search a premises “is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime.” Helsley v. State, 809 N.E.2d 292, 295 (Ind.2004) (emphasis added) (quoting Overstreet v. State, 783 N.E.2d 1140, 1157 (Ind.2003); Esquerdo v. State, 640 N.E.2d 1023, 1029 (Ind.1994)). The magistrate must make its determination to issue a warrant “based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom.” Helsley, 809 N.E.2d at 295; see also State v. Allen, 525 N.E.2d 1267, 1269 (Ind.Ct.App.1988) (“To demonstrate probable cause to search premises, an affidavit must provide a sufficient basis of fact to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime.”).
Despite its length and considerable detail, the affidavit in this case is absolutely devoid of any facts whatsoever demonstrating a nexus between Eaton’s alleged drug activity[8] — at a commercial establishment — and his home at a remote location. Even where the facts have left little doubt concerning a defendant’s drug dealing activity, this Court has observed, “[CJases involving a lack of nexus between a controlled drug buy and the place to be searched have held the affidavit insufficient to establish probable cause.” Figert v. State, 686 N.E.2d 827, 830 (Ind.1997). The majority does not explain why it has now abandoned the nexus requirement. Nor does it say why it joins the few outlier jurisdictions that require no such nexus.
Today’s ruling invites the Government’s search of a suspect’s business, home, garage, tool shed, workshop, or any other property a suspect may use simply because a law enforcement officer believes, without more, that evidence of crime can be found there. In my view this is an anathema to the mandate of the Fourth Amendment of the United States Constitution as well as Article I, Section 11 of the Indiana Constitution. There were no bases in this case, substantial or otherwise, for the magistrate to conclude that probable cause existed for the issuance of a search warrant. Eaton’s motion to suppress should have been granted. Therefore I agree with the result reached by the Court of Appeals and would reverse the judgment of the trial court.

. I say “alleged” because there is considerable question in my mind whether there was sufficient probable cause to arrest Eaton on drug related charges in the first place.